**BRYAN CAVE LLP**
Joel Siegel, California Bar No. 155581
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Attorneys for Plaintiff,
La Quinta Franchising, LLC.

FILED
MAY 14 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

FAXED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT, SAN FRANCISCO

LA QUINTA FRANCHISING, LLC, a Nevada limited liability company,

Plaintiff,

vs.

CORDELIA HOTEL VENTURE, INC., a California Corporation and DOLAT PATEL, an individual,

Defendants.

Case No. C 07 2556 JL

**COMPLAINT FOR INJUNCTION AND DAMAGES FOR:**

1. Breach of Contract
2. Breach of Guarantee

**DEMAND FOR JURY TRIAL**

## COMPLAINT

The above-named plaintiff, La Quinta Franchising, LLC, by its attorneys, Bryan Cave, LLP, and as for its Complaint against the above-named defendants, alleges to the Court as follows:

### JURISDICTION
[Diversity of Citizenship]

1.  This Court has original jurisdiction under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states, as the plaintiff, La Quinta Franchising, LLC ("La Quinta"), is a limited liability corporation incorporated

1  under the laws of the State of Nevada with its principal place of business in Texas,
2  and the defendants, Cordelia Hotel Ventures, Inc. ("Cordelia"), is a corporation
3  incorporated under the laws of the State of California with its principal place of
4  business in Concord, California, and the remaining defendant, Dolat Patel is a
5  citizen of the State of California, with his principal residence in Concord, County of
6  Contra Costa, California, and the matter in controversy is no less than One Hundred
7  Thousand Dollars ($100,000) and interest and therefore exceeds, exclusive of costs,
8  Seventy-Five Thousand Dollars ($75,000).

## VENUE

10  2.  Venue in this Court is proper because the defendants reside within this
11  District, and a substantial part of the events giving rise to the claim set forth herein
12  occurred within this District.

## THE PARTIES

14  3.  Plaintiff La Quinta is a limited liability company organized and
15  existing under the laws of the State of Nevada, licensed to do business in the State
16  of Texas and having its principal place of business in the State of Texas. For all
17  purposes relevant herein, La Quinta is the successor in interest of La Quinta Inns,
18  Inc. ("LQI").

19  4.  Plaintiff is informed and believes that Defendants Cordelia is a
20  corporation formed and existing in the State of California, having its principal place
21  of business in Concord, County of Contra Costa, State of California.

22  5.  Plaintiff is informed and believes that Defendant Dolat Patel is a
23  citizen of California with his principal place of residence in Concord, County of
24  Contra Costa.

## GENERAL ALLEGATIONS

### *The La Quinta System:*

27  6.  La Quinta operates and licenses others to operate hotels under the trade
28  names "La Quinta Inn" and "La Quinta Inn & Suites." La Quinta, its assignors and

predecessors have continually used the names "La Quinta" and/or "La Quinta Inn" and/or "La Quinta Inn & Suites" as its trade names and its service marks in connection with the operation of licensed La Quinta Inns.

7. La Quinta, its assignors and predecessors have developed a comprehensive system for operating La Quinta Inns, which includes (but is not limited to) trademarks, logos, slogans, trade dresses and service marks (collectively, the "La Quinta Marks"), building designs and layouts, equipment, specifications for authorized accessories, proprietary manuals, training programs, methods of operation and inventory control, and business standards and policies (collectively, the "System"). La Quinta has the exclusive right to license the La Quinta Marks, which are registered on the principal register of the United States Patent and Trademark office (the "USPTO"). Since its first use, the name La Quinta has become universally associated with La Quinta's unique and particular plan of hotel service operation. As a result, La Quinta has common law trade name rights and trademark rights in the name "La Quinta" and the other La Quinta Marks.

### *The License Agreement*

8. On or about November 6, 2003, La Quinta entered into a license agreement wherein Cordelia as granted a non-exclusive license to operate a hotel establishment in Fairfield, California, using certain of La Quinta's intellectual proprietary information, including but not limited to trademarks, copyrights, marketing materials, training programs, policies, manuals and trade secrets. Attached hereto as Exhibit "1", and incorporated by this reference, is a true and correct copy of said agreement, which is hereinafter referred to as the "License Agreement."

9. The License Agreement provides for Cordelia's use of La Quinta's intellectual proprietary information pertaining to the System, including, but not limited to, the La Quinta Marks, logos, slogans, servicemarks, trade dresses,

1  goodwill, copyrights, trade secrets, know-how, operating methodologies, systems,
2  standards and manuals, marketing materials, signage, furniture, equipment, fixtures,
3  training programs, specifications and policies (collectively, the "La Quinta
4  Intellectual Property").

5      10.    Pursuant to the License Agreement, Cordelia agreed that it was
6  obligated to open and operate the La Quinta Inn Facility for a term of 20 years
7  under the La Quinta Marks.

8      11.    At Section 5.03 of the License Agreement, the parties agreed on the
9  following timeline for construction, completion, and opening of Cordelia's La
10  Quinta Inn and Suites, in relevant part, as follows:

> (b) If your Facility is to be newly constructed, you shall commence construction (i.e., you start excavation or grading for foundations for the Project) within six (6) months after the Effective Date. Construction shall be completed, and your Facility shall open for business as a La Quinta Lodging Facility, within eleven (11) months after the date you commence construction, if your Facility is a La Quinta Inn, or within fourteen (14) months after the date you commence construction, if your Facility is a La Quinta Inn & Suites; provided however that in no event shall you open your Facility without an Opening Approval Notice as described in Section 5.03(h).
>
>     *    *    *    *
>
> (g) Time is of the essence in the performance of this Agreement. However, we will give you a written extension to commence construction, complete construction, finish conversion renovations or open your La Quinta Lodging Facility for business if you are delayed due to Force Majeure, but under no circumstances shall such delays, collectively, exceed ten (10) months.
>
> **Exhibit E – Additional Franchise Agreement Terms**
>
> 1. Construction Commencement. Section 5.03(b) of the Agreement is amended to delete the phrase "six (6)

months" in the first sentence of that section and to replace that phrase with "twelve (12) months". If requested by Franchisee, Franchisor will not unreasonably withhold its approval to further extend the construction commencement date by up to two (2) six (6) month periods provided Franchisee provides Franchisor with evidence that it has applied for building permits and any other required approvals to construct the Facility and demonstrates that it is in good faith pursuing such permits or other approvals and proceeding towards construction commencement and is otherwise in full compliance with the terms of this Agreement.

12. At Section 5.03(i), Cordelia expressly agreed and warranted to La Quinta as follows:

> Neither our approval of the Site nor any assistance we may give you in identifying the Site, constitutes any acknowledgement, warranty or representation of any kind, express or implied, including, without limitation, any warranty or representation as to the potential access, visibility or profitability of a La Quinta Lodging Facility at the Site. Our approval of the Site merely signifies that we are willing to grant a franchise for a La Quinta Lodging Facility at that location. Your decision to develop and operate your Facility at the Site is based solely on your own independent investigation of the suitability of the Site for a La Quinta Lodging Facility. Our exercise of our right to approve the Site layout, to approve any plans, to inspect the construction of your Facility and to issue the Opening Approval Notice shall be solely for the purpose of assuring compliance with our Standards and shall not be construed as any express or implied representation or warranty that your Facility complies with any applicable laws, codes or regulations (including the ADA or any other federal, state, or local law or ordinance regulating standards for the access to, use of, or modification of buildings for and by persons whose disabilities are protected by law) or that the construction thereof is sound or free from defects. Our criteria for approval or disapproval do not encompass

technical, architectural or engineering considerations. We shall have no liability or obligation with respect to the construction of your Facility.

13. At Section 16.01 of the License Agreement, Cordelia expressly agreed that failure to comply with the requirements of Section 5 would constitute a material default of the License Agreement:

> A material breach and an event of default under this Agreement shall occur if:
>
> (f) you fail to comply with the construction and opening requirements described in Section 5.03(b), (c) or (f);

14. Section 16.02 of the License Agreement provides for certain remedies, in relevant part, in the event of such a material default as follows:

> Upon the occurrence of an event of default described in Section 16.01, we shall have the right to exercise any one or more of the following remedies, in addition to any other remedies we may have at law or in equity (which may include without limitation, an action for specific performance and injunctive relief):
>
> (a) we shall have the right to terminate this Agreement and the franchise granted to you, effective immediately upon delivery of notice of termination to you. . . .

15. At Section 18.03 of the License Agreement, Cordelia and La Quinta agreed to liquidated damages, in relevant part, as follows:

> (a) by granting you the rights hereunder, we have foregone the opportunity to grant a franchise to another party or for us or our Affiliates to own and operate a La Quinta Lodging Facility at the Site or in proximity to the Site; and (b) if this Agreement is terminated for any reason, other than as set forth in Sections 15.01, 15.02 and 15.03, we will suffer substantial damages because of the termination, including lost Royalty Fees, lost

market penetration and lost goodwill in the market area of the Site, lost opportunity costs, and the expense of developing another La Quinta Lodging Facility in the market area, which damages are extremely difficult to calculate.

Accordingly, if this Agreement is terminated for any reason, except as set forth in Section 15.01, 15.02 or 15.03, then, in addition to our other remedies, you agree to pay us, within thirty (30) days after termination, as liquidated damages and not as a penalty, an amount equal to three (3) times the average annual total Royalty Fees payable during the thirty six (36)-month period immediately preceding termination. If your Facility has been open less than thirty six (36) months on the date of termination, you agree to pay us an amount as liquidated damages and not as a penalty, equal to three (3) times the total Royalty Fees payable to us in the previous twelve (12) months. You agree and acknowledge that such amounts are reasonable. Notwithstanding the foregoing, (a) if the Agreement is so terminated within the first twelve (12) months of operation of your Facility, you agree to pay us as liquidated damages and not as a penalty, the amount of $100,000, (b) if this Agreement is so terminated before your Facility opens for business as a La Quinta Lodging Facility, you agree to pay us as liquidated damages and not as a penalty, the amount of $100,000, unless you can demonstrate to our reasonable satisfaction that your failure to open is due solely to circumstances constituting Force Majeure, and (c) if this Agreement is so terminated within the last three (3) years of the Term, you agree to pay us an amount as liquidated damages and not as a penalty, equal to the average monthly Royalty Fees payable over the thirty six (36)-month period prior to termination, multiplied by the number of months remaining in the Term.

The liquidated damages described in this Section 18.03 shall not constitute an election of remedies. It shall serve only as compensation for our lost Royalty Fees, lost market penetration and lost goodwill in the market area of the Site, lost opportunity costs and the expense of

developing another La Quinta Lodging Facility in the market area, and shall not constitute compensation for any other purpose.

**Exhibit E Additional Franchise Agreement Terms**

2. Liquidated Damages. Notwithstanding Section 18.03 of this Agreement, we agree that if this Agreement is terminated prior to the date you commence construction of your Facility or before your Facility opens as a La Quinta Lodging Facility, you shall not be liable for liquidated damages pursuant to Section 18.03 if you determine that operating a lodging facility on the Site is not feasible and thereafter do not construct or open any lodging facility on the Site. However, in that event, we shall be entitled to retain the Affiliation Fee and all other fees paid by you prior to such termination.

16. Section 20.07 of the License Agreement provides for Costs and Attorneys' Fees, in relevant part, as follows:

The party who prevails in any judicial proceeding will be awarded its costs and expenses incurred in connection therewith, including reasonable attorneys' fees.

*Cordelia's Breaches of the License Agreement*

17. Despite the terms of the License Agreement, Cordelia failed to commence construction by May 6, 2004. As an accommodation, La Quinta agreed, without waiver, to extend the deadline to November 6, 2004. Again, Cordelia failed to meet that deadline either.

18. In response, and at Cordelia's request, La Quinta agreed, again without waiver, to extend Cordelia's deadline, this time to May 5, 2005. La Quinta sent a letter which states as follows:

As you are aware, pursuant to Section 5.03(b) of your Franchise Agreement construction was to have commenced on your Facility no later than May 6, 2004. Such deadline was then extended to November 6, 2004.

> You have now requested an additional one hundred eighty (180) day extension to commence construction of your hotel project. We are willing to allow you such an extension from November 6, 2004, the date upon which your initial extension period to commence construction expired (that is, until May 5, 2005).
>
> Please be advised that our willingness to grant you additional time to commence construction of your hotel is not to be deemed a waiver of our right to insist upon strict performance of your obligations under your Franchise Agreement in the future, including without limitation your obligation to commence construction of your hotel facility upon the extended deadline as set forth above.
>
> We look forward to you commencing construction of your hotel. If you have any questions, please feel free to contact us.

19. When Cordelia failed to meet the May 5, 2005 commencement deadline, La Quinta, once again, extended the deadline one hundred and eighty days (until November 6, 2005).

20. Cordelia again failed to meet the this latest extension to commence construction. Accordingly, on or about June 5, 2006, La Quinta sent to Cordelia a Notice of Default which states as follows:

> Your Franchise Agreement required you to commence construction of your hotel on or before May 6, 2004. With the hope that you would later be able to commence construction of your hotel project, we extended your deadline to start construction to November 6, 2004 and thereafter again extended it to May 5, 2005. When you once again failed to meet the commencement deadline we extended the deadline to November 6, 2005. It is now June 2006 and you have still not commenced construction of your hotel. As a result of your failure to commence construction of your La Quinta hotel, I must advise you that you are in default under your Franchise Agreement. If you desire to cure this default, then you must correct this failure within 30 days after receipt of this notice. If

you fail to do so, then La Quinta intends to terminate your Franchise Agreement. Please be advised that if your Franchise Agreement is terminated as a result of your default, you will additionally be liable to La Quinta for liquidated damages.

Please immediately take action to correct this default. If you would like to discuss the proper procedure to cure this default, you are welcome to contact La Quinta's Franchise Development Department by calling Rajiv Trivedi at 214-492-6753. We would appreciate your prompt resolution of this matter so that we may avoid legal action and the resulting attorneys' fees and expenses, for which you will also be responsible.

21. On June 24, 2006 La Quinta sent Cordelia another letter ( the "Cure Extension Under Notice of Default") which states as follows:

> On June 5, 2006 I sent to you a Notice of Default, which required you to commence construction of your La Quinta hotel on or before July 5, 2006. The purpose of this correspondence is to modify the terms upon which you may cure the construction commencement default. This letter should not be construed as a rescission of the Notice of Default or a waiver of La Quinta's rights to pursue all remedies available to it under the Franchise Agreement should the default not be cured as provided herein.
>
> In order to avoid La Quinta exercising the remedies available to it under the Franchise Agreement upon uncured default, on or before August 25, 2006, you must provide Mr. Jeff Palla with a copy of your lender's project study upon which they based denial of financing.
>
> In the event that you fail to provide us with a copy of your lender's project study on or before August 25, 2006, La Quinta may immediately pursue all remedies available to it as provided in the Franchise Agreement and as outlined in the Notice of Default.

22.   Despite the foregoing opportunity, Cordelia never provided the requested documentation, never commenced construction, and never indicated the existence of a Force Majeure.

### *Notice and Termination of the License Agreement:*

23.   On September 7, 2006 La Quinta sent Cordelia a written notice of termination ("Termination Notification") which states as follows:

> You have been previously notified that you are in default under your Franchise Agreement due to your failure to commence construction of your property on or before May 6, 2004. With the hope that you would later be able to commence construction of your hotel project, we extended your deadline to start construction to November 6, 2004 and thereafter again extended it to May 5, 2005. When you again failed to meet the commencement deadline we extended the deadline to November 6, 2005. In June of 2006 we sent you another notification of default for failure to commence construction of your property. In response to your pleas for more time, we yet again extended your construction commencement deadline to July 5, 2006 by way of a Cure Extension Under Notice of Default. When you failed to meet the July 5, 2006 deadline we once again extended your time period to cure the default and commence construction to August 25, 2006. Despite our continued patience, you have once more failed to commence construction of your property.
>
> Accordingly, without constituting an election of remedies and without waiving the right to pursue any other remedy to which La Quinta may be entitled under your Franchise Agreement or at law or in equity, La Quinta hereby exercises its right to terminate your Franchise Agreement immediately.
>
> Pursuant to your Franchise Agreement we are entitled to liquidated damages in the amount of $100,000 as a result of the early termination of your Franchise Agreement. DEMAND IS HEREBY MADE FOR THE IMMEDIATE PAYMENT OF THIS AMOUNT. If you fail to

immediately pay this amount, La Quinta intends to commence legal action against you to collect all amounts due to La Quinta. Please be advised that you will be responsible for all attorneys' fees and expenses incurred by La Quinta in pursuing collection of this amount.

Nothing contained herein shall be determined to modify, waive or otherwise affect any of the provisions of the Franchise Agreement. No action or inaction by La Quinta shall constitute a waiver of any other right or remedy available to it. La Quinta hereby reserves all of its rights and remedies under the Franchise Agreement, at law and in equity, including without limitation those arising as a result of your defaults under, and the termination of, the Franchise Agreement and/or arising as a result of any other or further failures by you to abide by the terms of the Franchise Agreement.

24. To date, Cordelia remains in material breach of the License Agreement as more fully set forth below.

### *Dolat Patel's Breaches of the Guarantee Rider*

25. On or about November 6, 2006, defendant Dolat Patel (the "Guarantor") executed a Guaranty (the "Guarantee Rider") in connection with the License Agreement, which states in relevant part as follows:

Each Guarantor, independently of the obligations of Franchisee, does hereby, jointly and severally, guaranty to franchisor the prompt payment and performance, when due, of each and every obligation of Franchisee under that certain Franchise Agreement dated on or about the same date as this Guaranty, consisting of such Franchise Agreement, the Basic Terms and Supplemental Terms thereof, and each exhibit, rider and addendum thereto, including any renewal, replacement or modification of any of the foregoing (the "Agreement"). Each Guarantor represents and warrants that each Principal Owner is the sole and exclusive beneficial owner of his Ownership Interest in Franchisee, free and clear of all liens, restrictions, agreements and encumbrances of any kind or

nature, other than those required or permitted by the Agreement.

26. To date, the Guarantor has failed and refused, and continues to fail and refuse to pay and continues to owe La Quinta said monies due under the Guarantee Rider.

27. In addition, as signatory to the Guarantee Rider, the Guarantor breached his obligation to guarantee this same performance by Cordelia under the License Agreement.

28. The Guarantor breached the Guarantee Rider by failing and refusing to pay La Quinta monies which were and continue to be due and owing under the License Agreement and by otherwise failing to guarantee Cordelia's performance of the License Agreement, including but not limited to Section 5.03 thereof.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

29. La Quinta incorporates by reference each and every allegation stated in Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. La Quinta has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the License Agreement. Furthermore, La Quinta is ready, willing and able to perform all conditions which may be required on its part to be performed in accordance with the terms of the License Agreement and has offered, and continues to offer, to perform them, or is otherwise excused from same.

31. Cordelia breached the License Agreement by, among other things, failing and refusing to comply with the requirements of Article V.

32. Because of Cordelia's breach of the License Agreement, La Quinta was entitled to terminate and did terminate the License Agreement.

33. Section 18.03 of the License Agreement provides that, in the event of termination of the License Agreement, the Defendants shall pay liquidated damages to La Quinta in the amount of $100,000.

34. Notwithstanding La Quinta's demand of payment, Defendants has failed to pay La Quinta liquidated damages as required in Section 18.03 of the License Agreement.

35. By virtue of the premature termination of the License Agreement, La Quinta sustained a loss of future revenue over the remainder of the term of the License Agreement.

36. If the Court determines that the Defendants is not liable to pay La Quinta liquidated damages as required by Section 18.03 of the License Agreement then, in the alternative, Defendants is liable to La Quinta for actual damages for premature termination of the License Agreement.

37. As a proximate and direct result of these material breaches, La Quinta has been damaged in an amount according to proof but no less than the amounts set forth above.

## SECOND CLAIM FOR RELIEF

### (Breach of Guarantee)

38. La Quinta incorporates by reference each and every allegation stated in Paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. La Quinta has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the Guarantee Rider.

40. The Guarantor breached the Guarantee Rider by failing and refusing to pay La Quinta monies which were and continue to be due and owing under the License Agreement and by otherwise failing to guarantee Cordelia's performance of the License Agreement, including but not limited to Section 5.03 thereof

1  41. As a proximate and direct result of these material breaches, La Quinta has been damaged in an amount according to proof but no less than the amounts set forth herein.

WHEREFORE, La Quinta demands judgment, against all defendants, as follows:

1. For an order requiring the specific performance of the License Agreement and Guarantee Rider by defendants, respectively, to wit: an order enjoining defendants to ensure compliance and to comply with all post-termination covenants of the License Agreement including but not limited to those set forth in Section 15 thereof;

2. For liquidated damages in an amount of no less than $100,000 and interest, or, in the alternative, for actual damages according to proof, together with interest;

3. For reasonable attorneys fees according to proof;

4. For costs of suit;

5. For a declaration that the License Agreement referenced herein and attached hereto as Exhibit "1" is terminated except for the survival and termination provisions, as defined therein; and

6. For such other relief as the Court deems proper.


Dated: May 14, 2007

Joel Siegel
BRYAN CAVE LLP
By: _____

Attorneys for Plaintiff