EXHIBIT C

# L.I.S.A. SOFTWARE LICENSE AGREEMENT

THIS SOFTWARE LICENSE AGREEMENT (this "Agreement") is made as of _November 6_, 20_03_ (the "Effective Date"), between LA QUINTA FRANCHISING LLC, a Nevada limited liability company ("Franchisor" or "we"), and CORDELIA HOTEL VENTURES, INC., a California corporation ("Franchisee" or "you").

## 1. INTRODUCTION

1.1 Franchisor and Franchisee have entered into a Franchise Agreement dated _November 6_, 20_03_ (the "Franchise Agreement") whereby Franchisee has been granted the right to develop and operate a La Quinta® Inn or a La Quinta® Inn and Suites lodging facility (the "Facility") at 4355 Central Place, Fairfield, California 94534 (the "Site"). Pursuant to the Franchise Agreement, Franchisee has agreed to use such computer systems as Franchisor may require from time to time and to execute this Agreement in connection therewith.

1.2 Franchisor has determined that its proprietary computer software system commonly known as "L.I.S.A." should currently be used at La Quinta Inns and La Quinta Inns and Suites to facilitate property management, reservations and reporting functions.

1.3 Franchisee acknowledges having read this Agreement and accepts its terms as being reasonably necessary to protect Franchisor's proprietary interests.

## 2. DEFINITIONS

2.1 "Certified User" shall mean any owner, manager or employee of Franchisee who has taken the necessary Software training programs and has received the minimum passing score on the program examination.

2.2 "Designated Computers" shall mean the computer system at the Site on which the Software is installed.

2.3 "Documentation" shall mean available functional specifications, reference manuals, user guides, system operation guides and other materials supplied by Franchisor to Franchisee in written or machine readable form, and all revisions and additions thereto, and all copies thereof pertaining to the Software.

2.4 "Software" shall mean Franchisor's proprietary computer software commonly known as L.I.S.A., together with all related Documentation and, at any given time, all released Versions.

2.5 "Standard Enhancements" shall mean a Version of the Software in which corrections and minor functional enhancements have been included. Updates are registered by means of a change of the number to the right of the decimal point, e.g., 3.0 to 3.1.

2.6 "Major Enhancements" shall mean a Version of the Software in which substantial new functionalities or other substantial changes are introduced. Upgrades are registered by means of a change of the number to the left of the decimal point, e.g., 3.0 to 4.0.

2.7 "Version" or "Versions" shall mean any single release or distribution of an enhancement, whether "Standard" or "Major."

2.8     "Use" means loading, utilization, storage or display of the Documentation or Software by Certified Users.

2.9     Other capitalized terms used herein shall have the meanings ascribed to them in the Franchise Agreement.

3.   **GRANT OF LICENSE**

3.1     <u>Software, Documentation</u>.  Franchisor hereby grants to Franchisee, and Franchisee hereby accepts from Franchisor, during the term of this Agreement, a nonexclusive, nontransferable license to (a) Use the Software only in the operation of the Facility at the Site, and (b) Use the Documentation only in connection with Use of the Software.  This license transfers to Franchisee neither title nor any proprietary or intellectual property rights to the Software, Documentation, or any copyrights, patents, or trademarks, embodied or used in connection therewith.  In addition to the terms and conditions set forth herein, this Agreement shall be subject to the terms and conditions of the Franchise Agreement.

3.2     <u>Copies</u>.  Franchisee may not copy, modify, duplicate or otherwise reproduce the Software, except as permitted by this Agreement or in writing from Franchisor.  Franchisee shall maintain accurate and up-to-date records of the number and location of all copies and Versions of the Software and inform Franchisor in writing of such location(s).  All copies of the Software, including any produced by Franchisee with Franchisor's consent, shall be the sole and exclusive property of Franchisor.  All copies and Versions of the Software will be subject to all terms and conditions of this Agreement.  Whenever Franchisee is permitted to copy or reproduce all or any part of the Software or Documentation, all titles, trademark symbols, copyright symbols and legends, and other proprietary markings must be reproduced.

4.   **LICENSE RESTRICTIONS**

4.1     <u>Restrictions on Licensed Rights</u>.  Franchisee acknowledges that components of the Software are proprietary and are subject to copyright claims by Franchisor.  Except as otherwise expressly provided in this Agreement, Franchisee agrees that it will not itself, or through any parent, subsidiary, affiliate, agent or other third party:

(a)     sell, lease, license or sublicense the Software or the Documentation;

(b)     decompile, disassemble, or reverse engineer the Software, in whole or in part;

(c)     write or develop any derivative software or any other software program based upon the Software or any Confidential Information;

(d)     use the Software to provide any services other than services provided at, through or from the Facility in accordance with the Franchise Agreement;

(e)     provide, disclose, divulge or make available to, or permit use of the Software by any third party without Franchisor's prior written consent; or

(f)     Use the Software to process any data other than Franchisee's own data relating to the Facility located at the Site.

C-2

5. **PAYMENTS**

   5.1 <u>License Fee</u>. In return for the license granted in Section 3, Franchisee shall pay Franchisor a one-time license fee in the amount of $4,500 not later than ninety (90) days before the opening of your Facility. In the event that we change the Software program or release a Major Enhancement within the first 24 months after the Effective Date of this Agreement, we will provide the new Software Version to you at no charge.

   5.2 <u>Maintenance Fee</u>. Franchisee shall pay to Franchisor a monthly maintenance fee established by Franchisor, which is subject to increase from time to time upon written notice. In consideration for the maintenance fee, Franchisor will provide Standard Enhancements and Software support in accordance with Sections 9 and 10, below.

   5.3 <u>Additional Support Costs</u>. Franchisee shall reimburse Franchisor for all reasonable costs and expenses (including but not limited to travel, living expenses reasonably convenient to the Site and labor costs for Franchisor's installer) incurred by Franchisor in connection with additional support, training, project management and other services requested by Franchisee and performed at the Site or other location requested by Franchisee. No additional costs shall be applicable to the installation, support and training which Franchisor is to provide pursuant to Sections 9 and 10 except as otherwise provided therein.

   5.4 <u>Shipping Fee</u>. Franchisee shall reimburse Franchisor for reasonable shipping charges incurred by Franchisor to ship the Software, including any hardware upon which the Software is installed, from Franchisor's office to the Site in accordance with Section 9.1.

   5.5 <u>Major Enhancements</u>. Franchisee shall pay a fee established by Franchisor for any Major Enhancements released beginning the 25th month after the Effective Date of this Agreement.

   5.6 <u>Taxes</u>. All amounts described herein are exclusive of all federal, state, municipal or other governmental excise, sales, value-added, use, personal property and occupational taxes, excises, withholding obligations and other levies now in force or enacted in the future and, accordingly, the amount of all payments hereunder is subject to an increase equal to the amount of any tax Franchisor may be required to collect or pay in connection with the Software and related services other than any tax on the net income of Franchisor.

   5.7 <u>No Offset or Liens</u>. Franchisee shall not withhold any payments due Franchisor hereunder on grounds of alleged nonperformance by Franchisor hereunder or under the Franchise Agreement, nor shall Franchisee set off any such payments against amounts owing or allegedly owing by Franchisor to Franchisee. Franchisee shall neither seek nor obtain a lien against the Software, the Documentation or any embodiment of them.

6. **OWNERSHIP**

   6.1 <u>Software, Documentation</u>. The components of the Software and Documentation are subject to copyrights and other proprietary rights. All rights, title and interest in and to the Software, the Documentation and any and all modifications to the foregoing regardless of whether authorized or made by Franchisee shall not pass to Franchisee, but shall remain with Franchisor. Franchisor shall be the sole owner of all inventions, discoveries, improvements, or enhancements relating to the Software (including without limitation any work of authorship that constitutes a "derivative work" of the Software within the meaning of the definition set forth in Section 101 of the U.S. Copyright Act), whether in written or unwritten form, and whether developed by Franchisor or Franchisee or others.

6.2   Unauthorized Use. Franchisee agrees to notify Franchisor immediately of the unauthorized possession, use, or knowledge of any item supplied under this Agreement and of other information made available to Franchisee under this Agreement, by any person or organization not authorized by this Agreement to have such possession, use or knowledge. Franchisee will promptly furnish full details of such possession, use or knowledge to Franchisor, will assist in preventing the recurrence of such possession, use or knowledge, and will cooperate with Franchisor in any litigation or other acts against third parties deemed necessary by Franchisor to protect Franchisor's proprietary rights. Franchisee's compliance with this Section shall not be construed in any way as a waiver of any right by Franchisor to recover damages or obtain other relief against Franchisee for any act or omission which may have resulted in the unauthorized possession, use or disclosure.

7.   **PROPRIETARY RIGHTS**

7.1   Representations. Franchisor represents and warrants that Franchisor has the right to grant to Franchisee all rights granted in Section 3, free and clear of any and all known agreements, liens, encumbrances, and claims for infringement of patents, copyrights, trade secrets or other proprietary rights of any third party.

7.2   Infringement. In the event of a determination that the Software or Franchisee's use of the Software in accordance with the terms of this Agreement infringes any proprietary right of any third party, Franchisor shall have the option, at its own expense, to (a) obtain for Franchisee the right to continue using the infringing item, (b) replace the infringing item or modify it so that it becomes noninfringing, or (c) terminate the licensed rights granted herein and grant Franchisee a refund of the license fee paid by Franchisee pursuant to Section 5.1, less reasonable depreciation based on usage, which shall be in no event less than the result of a straight-line computation based upon a five (5) year usable life.

7.3   Exclusions. Franchisor shall not be liable for any alleged infringement based upon modification of the Software by anyone other than Franchisor or use of the Software in combination with other software or any other products or devices if such claim would have been avoided but for such modification or combination.

8.   **CONFIDENTIAL INFORMATION**

Franchisee shall protect the Software as Franchisor's Confidential Information, as defined in and subject to the terms of the Franchise Agreement.

9.   **DELIVERY, INSTALLATION AND UPDATING OF THE SOFTWARE**

9.1   Delivery and Installation. Franchisee shall, at Franchisee's expense, obtain all computer hardware and software (other than the Software) which Franchisor may from time to time deem necessary or advisable, in its sole discretion, for use in connection with the Software and ship such hardware and software to one of the following, as designated by Franchisor: (i) the Facility, (ii) Franchisor or (iii) a third party designated by Franchisor. Franchisor shall install the Software on the computer hardware and, if applicable, deliver the installed Software, including any hardware upon which the Software is installed, to the Site. Such installation, and if applicable such delivery of the installed Software, shall occur within thirty (30) days after the delivery of the software and hardware to the location or party designated by Franchisor above.

9.2 **Enhancements**. Franchisee agrees to install, at Franchisee's expense, all Standard and Major Enhancements at the earliest possible opportunity, but in no event later than thirty (30) days after Franchisee's receipt of such enhancement or download instructions therefor from Franchisor. If Franchisee requires the assistance of Franchisor to install any Standard or Major Enhancement, Franchisor will provide such assistance (provided Franchisee shall reimburse Franchisor for the costs incurred by Franchisor in providing such assistance), and Franchisee agrees to abide by such terms, conditions and directions as established by Franchisor (e.g., making computer system available to Franchisor, Franchisee's employees performing operational tests at Franchisor's direction, etc.).

9.3 **Training**. Franchisor shall provide training to Franchisee with respect to the use of the Software at the Site as described in the Franchise Agreement. Franchisee acknowledges that its employees must obtain a score satisfactory to Franchisor on the training examination to become a Certified User. Franchisor reserves the right to charge Franchisee for any training requested by Franchisee in excess of normal Facility training requirements. Franchisee may reproduce for training purposes training materials utilized by Franchisor in connection with the training of Franchisee's personnel. Any such reproductions shall include any copyright or similar proprietary notices contained in the materials being reproduced. All training materials shall be deemed Confidential Information.

## 10. SOFTWARE SUPPORT

Franchisor shall furnish the following support services in connection with the Software:

10.1 **Error Correction**. In the event that the operation of the Software deviates materially from its specifications and such deviation can be replicated by Franchisee, Franchisee shall give Franchisor written notification of the deviation in sufficient detail to permit replication and analysis, and shall provide Franchisor with (a) all printouts and other information reasonably requested, and (b) telecommunications access to the Designated Computers as requested by Franchisor. Upon receipt of notice from Franchisee of any deviation, Franchisor shall use commercially reasonable efforts, first via telephone access and subsequently (if necessary) by onsite visit, to diagnose the cause of the deviation. Upon completion of the diagnosis, Franchisor shall advise Franchisee of the source of the deviation. If the deviation falls within the warranty set forth in Section 11.1, Franchisor shall use commercially reasonable efforts, without charge (other than for travel costs incurred in connection with onsite visits), to correct or avoid the deviation. If such deviation falls outside of the warranty set forth in Section 11.1, Franchisor shall furnish Franchisee with a written estimate of the cost of correction, and if Franchisee authorizes correction, Franchisor shall use commercially reasonable efforts to correct or avoid the deviation at Franchisee's sole cost and expense.

10.2 **Telephone Support**. Franchisor's support desk will be available to answer questions regarding the Software from Franchisee (if Franchisee is a natural person) or from any of Franchisee's Certified Users and, as appropriate, to render by telephone other software support services as described throughout this Section 10. Such services shall be provided hereunder 24 hours a day, seven days a week, in accordance with such terms and conditions as Franchisor may establish from time to time in its sole discretion. Franchisor reserves the right to set reasonable support service usage limits and charge Franchisee for support service requested by Franchisee in excess of those limits.

10.3 <u>Software Enhancements</u>. Franchisor shall deliver, at Franchisor's option, all Standard Enhancements to Franchisee by electronic means, by U.S. mail or by such other means as Franchisor deems appropriate, at no additional charge. Franchisor shall deliver all Major Enhancements to Franchisee by electronic means, U.S. mail or such other means as Franchisor deems appropriate. In the event Franchisee requests an alternative means of delivery of any enhancement, Franchisee shall pay any delivery and other charges associated therewith. If the Standard Enhancement is delivered electronically, Franchisor will install the Standard Enhancement onto Franchisee's computer system or, if directed to do so by Franchisor, Franchisee shall download and install the Standard Enhancement pursuant to Franchisor's directions and subject to the requirements of Section 9.2. If the Standard Enhancement is delivered via U.S. Mail, Franchisee shall be responsible for its installation and for merging it with any other software on the Designated Computers. In connection with the receipt of a Major or Standard Enhancement, Franchisor will provide telephone support as described in Section 10.2 to assist Franchisee with installation on the Designated Computers.

10.4 <u>Exclusions</u>. Franchisor shall not be required to provide any support services described in this Section which are necessitated by, with respect to, or otherwise in connection with (a) modification of the Software by anyone other than Franchisor, or (b) any malfunction of Franchisee's hardware.

11. <u>LIMITED WARRANTY: EXCLUSIVE REMEDY; LIMITATION OF LIABILITY</u>

11.1 <u>Limited Warranty</u>. Franchisor warrants, for a period of 90 days, that any Software and hardware installation services we perform will be done in a workmanlike manner in accordance with the installation instructions specified in the Documentation. No employee, agent, representative or affiliate of Franchisor has authority to bind Franchisor to any representation or warranty, oral or written, concerning the Software or any hardware or services.

11.2 <u>Exclusive Remedy</u>. In the event of any failure of the Software or any failure of the hardware installed by us to perform as a result of our installation of such hardware, during the warranty period set forth in Section 11.1, the only liability of Franchisor to Franchisee, and Franchisee's sole and exclusive remedy, shall be use by Franchisor of commercially reasonable efforts to correct the failure. Franchisor shall pay all reasonable shipping costs incurred in connection therewith.

11.3 <u>Disclaimers</u>. EXCEPT AS SET FORTH ABOVE, FRANCHISOR MAKES NO WARRANTIES, WHETHER EXPRESS, IMPLIED, OR STATUTORY REGARDING OR RELATING TO THE SOFTWARE, ANY HARDWARE, THE DOCUMENTATION, ANY MATERIALS OR SERVICES PROVIDED TO FRANCHISEE UNDER THIS AGREEMENT, INCLUDING MAINTENANCE AND SUPPORT. FRANCHISOR SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SOFTWARE, ANY HARDWARE, DOCUMENTATION AND ANY OTHER MATERIALS OR SERVICES, AND WITH RESPECT TO THE USE OF ANY OF THE FOREGOING.

11.4 <u>Limitation of Liability</u>. IN NO EVENT WILL FRANCHISOR BE LIABLE FOR ANY LOSS OF PROFITS, LOSS OF USE, BUSINESS INTERRUPTION, LOSS OF DATA, COST OF RECOVERY OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY KIND IN CONNECTION WITH OR ARISING OUT OF

C-6

THE FURNISHING, PERFORMANCE OR USE OF THE SOFTWARE, ANY HARDWARE, DOCUMENTATION OR ANY OTHER MATERIALS OR ANY OTHER SERVICES PERFORMED HEREUNDER, WHETHER ALLEGED AS A BREACH OF CONTRACT OR TORTIOUS CONDUCT, INCLUDING NEGLIGENCE, EVEN IF FRANCHISOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN ADDITION, FRANCHISOR WILL NOT BE LIABLE FOR ANY DAMAGES CAUSED BY DELAY IN DELIVERY OR FURNISHING THE SOFTWARE, ANY HARDWARE, DOCUMENTATION OR ANY OTHER MATERIALS OR SERVICES. FRANCHISOR'S LIABILITY UNDER THIS AGREEMENT FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, RESTITUTION, WILL NOT, IN ANY EVENT, EXCEED THE LICENSE FEE PAID BY FRANCHISEE TO FRANCHISOR UNDER THIS AGREEMENT.

   11.5   Acknowledgment. The parties acknowledge that they have reached agreement on the license fees, maintenance fees and other charges set forth in this Agreement in reliance on the disclaimers of warranty and limitations and exclusions of liability set forth in this Agreement and that the same form an essential basis of the bargain between the parties.

12.   **DISPUTE RESOLUTION**

   12.1   Mediation. All controversies and claims between the parties arising out of or related to this Agreement shall be subject to non-binding mediation in accordance with the terms of the Franchise Agreement.

   12.2   Exclusive Jurisdiction. Franchisee agrees that the U.S. District Court for the Northern District of Texas, or if such court lacks jurisdiction, the District Court (or its successor) for Dallas County, Texas shall be the venue and exclusive forum in which to adjudicate any case or controversy arising from or relating to this Agreement. Franchisee irrevocably submits to the jurisdiction of such courts and waives any objections to either the jurisdiction of or venue in such courts.

   12.3   Injunctive Relief. Franchisor may obtain in any court of competent jurisdiction any injunctive relief against conduct or threatened conduct for which no adequate remedy at law may be available or which may cause Franchisor irreparable harm (including any violation of Section 4 or 8), without bond. Franchisee's sole remedy in the event of the entry of such injunction shall be its dissolution, if warranted, upon hearing duly had (all claims for damages by reason of the wrongful issuance of any such injunction being expressly waived hereby). Franchisee agrees that the existence of any claim Franchisee may have against Franchisor, whether or not arising from this Agreement, shall not constitute a defense to the enforcement of any of Sections 4 and 8 hereof.

   12.4   Costs and Attorneys' Fees. The party who prevails in any judicial proceeding will be awarded its costs and expenses incurred in connection therewith, including reasonable attorneys' fees.

   12.5   Governing Law. This Agreement will be construed under the substantive laws of the State of Texas, without regard to its conflict of law principles.

13. **TERM AND TERMINATION**

    13.1 <u>Term</u>. This Agreement and the license granted hereunder shall be co-terminus with the Franchise Agreement and shall expire or terminate upon expiration or termination of the Franchise Agreement, unless otherwise terminated pursuant to Section 13.2 or Section 13.3 below. Franchisee's failure to comply with the terms of this Agreement, including failure to timely pay the monthly maintenance fee described in Section 5.2 above or any other fees described herein, shall be considered a default by Franchisee under the terms of the Franchise Agreement.

    13.2 <u>Termination and Other Remedies</u>. This Agreement and the licensed rights granted hereunder may be terminated by Franchisor in the event that Franchisee has not performed any material obligation or has otherwise breached any material term of this Agreement (a) immediately upon receipt of written notice thereof if the breach or nonperformance is incapable of cure, including, without limitation, breach of Sections 4.1 and 8.1 hereof, or (b) upon the expiration of thirty (30) days after receipt of written notice thereof if the breach or nonperformance is capable of cure and has not then been cured. In addition to our right to terminate this Agreement and to take such action as may be permitted by applicable law, we shall have the right, upon an event of default hereunder or if you are in default under any other agreement between you or your Principal Owners and us or our Affiliates, to disable the Software until such default has been cured to our reasonable satisfaction.

    13.3 <u>Termination Due to New System</u>. If Franchisor determines that the best interests of the System will be served by the adoption and use of a new computer software system, this Agreement may be terminated by Franchisor upon thirty (30) days written notice, and Franchisee shall be obligated to use such new system and enter into appropriate agreements in accordance with the terms of the Franchise Agreement.

    13.4 <u>Subsequent Obligations</u>. Upon any termination of this Agreement, Franchisee shall promptly return to Franchisor the Software and the Documentation, including all such copies or Versions prepared by or for Franchisee or otherwise in Franchisee's possession. Within thirty (30) days after the effective date of termination, Franchisee shall certify in writing that all such materials have been returned and that all intangible copies of the Software have been purged from Franchisee's computers. Notwithstanding the foregoing, Franchisee shall not be obligated to purge intangible copies and Versions of the Software dedicated exclusively to the preservation of historical data, so long as any such copy is used solely for the purpose of retrieving, but not otherwise processing, such historical data.

14. **INDEMNIFICATION**

    Franchisor shall indemnify, defend and hold Franchisee harmless in accordance with the terms and conditions contained in Section 17.03 of the Franchise Agreement from and against any and all Losses and Expenses arising from any claim, demand, action or proceeding initiated by any third party based upon infringement of a patent, copyright, trade secret or other proprietary right as a result of Franchisee's use of the Software if (a) Franchisee has installed all Standard or Major Enhancement[s] supplied by Franchisor, if any, which results in total or partial avoidance of the alleged infringement; (b) the claim does not arise out of modification of the Software by anyone other than Franchisor or use of the Software with any other software,

and (c) Franchisee is in full compliance with this Agreement and has not used the Software in any unauthorized manner.

15. **GENERAL TERMS**

15.1 Assignment. Franchisor may freely transfer or assign this Agreement and any and all part of its rights or obligations in this Agreement to any person or Legal entity. Neither this Agreement nor any rights granted hereby may be assigned by Franchisee without the prior written consent of Franchisor. Franchisor specifically waives and disclaims any right to impose any charge in connection with a permitted assignment by Franchisee so long as Franchisee retains no copy, Version or other portion of the Software and Documentation, and the assignee agrees to abide by the terms and conditions of this Agreement.

15.2 Modification. This Agreement can only be modified by a written agreement duly signed by persons authorized to sign agreements on behalf of Franchisee and of Franchisor.

15.3 Severability. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

15.4 Relationship of Parties. Neither this Agreement nor the dealings of the parties pursuant to this Agreement shall create a fiduciary relationship or any other relationship of trust or confidence between the parties hereto. Franchisor and Franchisee will be and shall act as independent contractors, and neither party is authorized to act as an agent or partner of, or joint venturer with, the other party for any purpose. Neither party by virtue of this Agreement shall have any right, power, or authority to act or create any obligation, express or implied, on behalf of the other party.

15.5 Notices and Payments. All notices, requests and reports permitted or required to be delivered by this Agreement shall be delivered and deemed delivered as provided in the Franchise Agreement. All payments and reports required by this Agreement shall be sent to Franchisor at the address identified in the Franchise Agreement unless and until a different address has been designated by written notice in accordance with the terms of the Franchise Agreement. No restrictive endorsement on any check or in any letter or other communication accompanying any payment shall bind Franchisor, and Franchisor's acceptance of any such payment shall not constitute an accord and satisfaction.

15.6 Force Majeure. Neither party shall be liable for any damages or penalty for any delay in performance of, or failure to perform, any obligation hereunder or for failure to give the other party prior notice thereof when such delay or failure is due to Force Majeure.

15.7 Non-Waivers. No express or implied waiver by either party of any event of default hereunder shall in any way be, or be construed as, a waiver of any future or subsequent event of default.

15.8 Survival. All provisions hereof which expressly or by reasonable implication contemplate performance following the expiration, termination or assignment of this Agreement shall survive such expiration termination or assignment, including, without limitation, Sections 6, 7, 8, 10, 11, 13.4 and 14.

15.9    Taxes. Franchisee agrees to pay any sales, use, ad valorem, personal property and general intangibles tax and any registration fees arising out of this Agreement and the transactions contemplated herein, except for any taxes imposed upon the gross income of Franchisor.

15.10   Additional Equipment. Franchisee is solely responsible for all hardware, operating systems, and other software and peripherals required to make the Software operate as intended, including but not limited to all costs and expenses related to a personal computer and a compatible operating system. In the event the operation of the Software requires an Internet, dial-up, VPN, T1 or other connection to a remote computer designated or approved by Franchisor, Franchisee shall be responsible for all hardware, software, and telecommunications charges and expenses in connection therewith.

15.11   Entire Agreement. The parties acknowledge that this Agreement, together with the Franchise Agreement, set forth the complete, exclusive and integrated understanding of the parties which supersedes all proposals or prior agreements, oral or written, and all other prior communications between the parties relating to the subject matter of this Agreement.

15.12   Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

IN WITNESS WHEREOF, each party has executed and delivered this Agreement on the date set forth below its signature below, effective for all purposes as of the Effective Date.

| FRANCHISOR | FRANCHISEE |
|---|---|
| **LA QUINTA FRANCHISING LLC,** a Nevada limited liability company | **CORDELIA HOTEL VENTURES, INC.,** a California corporation |
| By: _____ Name: Alan L. Tallis Title: Executive Vice President Date: November 6, 2003 | By: _____ Name: Dolat D. Patel Title: President Date: 10/16/03 |