BRYAN CAVE LLP
Joel D. Siegel, California SBN: 155581
Heather S. Orr, California SBN: 239449
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Attorneys for Plaintiff,
La Quinta Franchising, LLC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT, SAN FRANCISCO

| | |
|---|---|
| LA QUINTA FRANCHISING, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CORDELIA HOTEL VENTURE, INC., a California Corporation and DOLAT PATEL, an individual,<br><br>Defendants. | Case No. C072556 JL<br><br>[Assigned to Magistrate Judge James Larsen]<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CORDELIA HOTEL VENTURE, INC. AND DOLAT PATEL<br><br>Date: TBD<br>Time: TBD<br>Dept: TBD<br><br>[Filed concurrently with Notice of Motion and Motion; Declaration of Rajiv Trivedi; Declaration of Joel Siegel; and [Proposed] Order] |

Plaintiff LA QUINTA FRANCHISING, LLC (hereafter "La Quinta" or "La Quinta Franchising") respectfully submits the following Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment against Defendants CORDELIA HOTEL VENTURE, INC. and DOLAT PATEL in the above-entitled action.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 2

FACTUAL BACKGROUND ............................................................................................... 2

    a.    The Agreements ...................................................................................... 3

    b.    Defendants' Breach of the Franchise Agreement .................................... 6

    c.    Notice and Termination of the Franchise Agreement: ............................ 7

LEGAL STANDARD .......................................................................................................... 8

    a.    The Entry of Default Judgment is Proper ............................................... 8

    b.    Defendants Breached the Franchise Agreement ..................................... 9

    c.    The Liquidated Damages Clause in the Franchise Agreement is Enforceable ............................................................................................. 9

    d.    The Award of Prejudgment Interest is Proper ...................................... 10

    e.    Damages ................................................................................................ 11

CONCLUSION ................................................................................................................... 12

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

# TABLE OF AUTHORITIES

Page

**Cases**

Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,
   48 S.W.3d 225 (Tex. 2001)..................................................................................11

BMG Direct Marketing, Inc. v. Peake,
   178 S.W.3d 763 (Tex., 2005).................................................................................10

Clifton v. Premillenium, Ltd.
   2007 WL 2142989, 2 (Tex., 2007) ..........................................................................9

Forteza v. Mills,
   534 F.2d 415 (1st Cir. 1976)....................................................................................8

Geo. M. Dilley & Son v. Wise & Hervey,
   160 S.W. 985 (Tex.Civ.App. 1913).........................................................................9

Irwin v. Mascott,
   96 F.Supp.2d 968 (N.D. Cal. 1999).......................................................................10

Mobil Prod. Texas & New Mexico, Inc. v. Cantor,
   93 S.W.3d 916 (Tex. 2002)....................................................................................11

Phillips Petroleum Co. v. Stahl Petroleum Co.,
   569 S.W.2d 480 (Tex. 1978)..................................................................................11

Roach v. Dickenson,
   50 S.W.3d 709 (Tex. 2001)....................................................................................11

S&R Corp. v. Jiffy Lube Intern., Inc.,
   968 F.2d. 371 (3rd Cir. 1992)..................................................................................7

U.S. v. Rainbolt,
   543 F.Supp. 580, 581 (D.C.Tenn., 1982) ..............................................................12

**Statutes**

Federal Rules of Civil Procedure 55 ................................................................................8

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

## INTRODUCTION

On May 14, 2007, La Quinta Franchising filed its Complaint in the above-entitled action against Defendants Cordelia Hotel Venture, Inc. and Dolat Patel alleging Breach of Contract and Breach of Personal Guarantees. The Defendants were personally served with the Summons and Complaint on May 15, 2007, but Defendants did not respond to the Complaint in this action in a timely manner or at all. Accordingly, the Clerk entered the defaults of the Defendants Cordelia Hotel Venture, Inc. and Dolat Patel on July 10, 2007. By this motion, Plaintiff La Quinta Franchising seeks Default Judgment of the Court against the Defendants in this matter in the amount of $129,131.45, which reflects La Quinta Franchising's actual damages, prejudgment interest and attorney's fees.

## FACTUAL BACKGROUND

La Quinta operates and licenses others to operate hotels under the trade names "La Quinta Inn" and "La Quinta Inn & Suites." La Quinta, its assignors and predecessors have continually used the names "La Quinta" and/or "La Quinta Inn" and/or "La Quinta Inn & Suites" as their trade names and their service marks in connection with the operation of licensed La Quinta Inns. See Declaration of Rajiv Trivedi filed and served concurrently ("Trivedi Decl."), ¶ 2.

La Quinta, its assignors and predecessors have developed a comprehensive system for operating La Quinta Inns, which includes (but is not limited to) trademarks, logos, slogans, trade dresses and service marks (collectively, the "La Quinta Marks"), building designs and layouts, equipment, specifications for authorized accessories, proprietary manuals, training programs, methods of operation and inventory control, and business standards and policies (collectively, the "System"). La Quinta has the exclusive right to license the La Quinta Marks, which are registered on the principal register of the United States Patent and Trademark office (the "USPTO"). Since its first use, the name La Quinta has become universally associated with La Quinta's unique and particular plan of hotel

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

service operation. As a result, La Quinta has common law trade name rights and trademark rights in the name "La Quinta" and the other La Quinta Marks. Id., ¶ 3.

### a. The Agreements

On or about November 6, 2003, La Quinta entered into a franchise agreement (the "Franchise Agreement") wherein Cordelia was granted a non-exclusive license to operate a hotel establishment in Fairfield, California, using certain of La Quinta's intellectual proprietary information, including but not limited to trademarks, copyrights, marketing materials, training programs, policies, manuals and trade secrets. See Trivedi Decl., ¶ 4, Exhibit "1."

The Franchise Agreement provides for Cordelia's use of La Quinta's intellectual proprietary information pertaining to the System, including, but not limited to, the La Quinta Marks, logos, slogans, servicemarks, trade dresses, goodwill, copyrights, trade secrets, know-how, operating methodologies, systems, standards and manuals, marketing materials, signage, furniture, equipment, fixtures, training programs, specifications and policies (collectively, the "La Quinta Intellectual Property"). Id., ¶ 5.

Pursuant to the Franchise Agreement, Cordelia agreed that it was obligated to open and operate the La Quinta Inn Facility for a term of 20 years under the La Quinta Marks. Id., ¶ 6.

At Section 5.03 of the Franchise Agreement, the parties agreed on the following timeline for construction, completion, and opening of Cordelia's La Quinta Inn and Suites, in relevant part, as follows:

> (b) If your Facility is to be newly constructed, you shall commence construction . . . within six (6) months after the Effective Date. Construction shall be completed, and your Facility shall open for business as a La Quinta Lodging Facility, within eleven (11) months after the date you commence construction, if your Facility is a La Quinta Inn, or within fourteen (14) months after the date you

> commence construction, if your Facility is a La Quinta Inn & Suites.
>
> \* \* \* \*
>
> (g) Time is of the essence in the performance of this Agreement. However, we will give you a written extension to commence construction, complete construction, finish conversion renovations or open your La Quinta Lodging Facility for business if you are delayed due to Force Majeure, but under no circumstances shall such delays, collectively, exceed ten (10) months.

Id., ¶ 7.

At Section 16.01 of the Franchise Agreement, Cordelia expressly agreed that failure to comply with the requirements of Section 5 would constitute a material default of the Franchise Agreement. Id., ¶ 8.

Section 16.02 of the Franchise Agreement provides for certain remedies, in relevant part, in the event of such a material default as follows:

> Upon the occurrence of an event of default described in Section 16.01, we shall have the right to exercise any one or more of the following remedies, in addition to any other remedies we may have at law or in equity (which may include without limitation, an action for specific performance and injunctive relief):
>
> we shall have the right to terminate this Agreement and the franchise granted to you, effective immediately upon delivery of notice of termination to you. . . .

Id., ¶ 9.

At Section 18.03 of the Franchise Agreement, Cordelia and La Quinta agreed to liquidated damages, in relevant part, as follows:

> Accordingly, if this Agreement is terminated for any reason, except as set forth in Section 15.01, 15.02 or 15.03, then, in addition to our other remedies, you agree to pay us, within thirty (30) days after termination . . . (if this

> Agreement is so terminated before your Facility opens for business as a La Quinta Lodging Facility) the amount of $100,000, unless you can demonstrate to our reasonable satisfaction that your failure to open is due solely to circumstances constituting Force Majeure.

Id., ¶ 10.

The parties included liquidated damages, because they agreed that actual damages would be "extremely difficult to calculate." The parties further agreed at Section 18.03 that such liquidated damages were not a penalty. Id.

Section 20.07 of the Franchise Agreement provides for Costs and Attorneys' Fees. Id., ¶ 11.

In connection with the Franchise Agreement, the Defendants were provided the following confidential information by La Quinta: Systems Manual, Purchasing Manual, Design & Construction Manual. Id., ¶ 23. Section 18.02 of the Franchise Agreement requires that in the event that the Franchise Agreement is terminated, the licensee must return all copies of the System Manual, Purchasing Manual, and Design and Construction Manual within 30 days. Id., ¶ 12. To date, Defendants have failed to return the foregoing manuals and thus are in breach of Section 18.02 of the Franchise Agreement. Id., ¶ 23.

On or about November 6, 2006, defendant Dolat Patel (the "Guarantor") executed a Guaranty (the "Guarantee Rider") in connection with the Franchise Agreement, which states in relevant part as follows:

> Each Guarantor, independently of the obligations of Franchisee, does hereby, jointly and severally, guaranty to franchisor the prompt payment and performance, when due, of each and every obligation of Franchisee under that certain Franchise Agreement dated on or about the same date as this Guaranty, consisting of such Franchise Agreement, the Basic Terms and Supplemental Terms thereof, and each exhibit, rider and addendum thereto, including any renewal, replacement or modification of any

of the foregoing (the "Agreement"). Each Guarantor represents and warrants that each Principal Owner is the sole and exclusive beneficial owner of his Ownership Interest in Franchisee, free and clear of all liens, restrictions, agreements and encumbrances of any kind or nature, other than those required or permitted by the Agreement.

Id., ¶ 13.

### b. Defendants' Breach of the Franchise Agreement

Despite the terms of the Franchise Agreement, Cordelia failed to commence construction by May 6, 2004. As an accommodation, La Quinta agreed, without waiver, to extend the deadline to November 6, 2004. Again, Cordelia failed to meet that deadline either. Id., ¶ 14.

In response, and at Cordelia's request, La Quinta agreed, again without waiver, to extend Cordelia's deadline, this time to May 5, 2005. La Quinta sent a letter memorializing this agreement. Id., ¶ 15.

When Cordelia failed to meet the May 5, 2005 commencement deadline, La Quinta, once again, extended the deadline one hundred and eighty days (until November 6, 2005). Id., ¶ 16.

Cordelia again failed to meet this latest extension to commence construction. Accordingly, on or about June 5, 2006, La Quinta sent to Cordelia a Notice of Default. Id., ¶ 17.

On June 24, 2006, La Quinta sent Cordelia another letter ( the "Cure Extension Under Notice of Default") modifying the terms upon which Cordelia could cure the default which required that Cordelia provide Mr. Jeff Palla with a copy of its lender's project study upon which they based denial of financing by August 25, 2006. Id., ¶ 18.

Despite the foregoing opportunity, Cordelia never provided the requested documentation, never commenced construction, and never indicated the existence of a Force Majeure. Id., ¶ 19.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

c. **Notice and Termination of the Franchise Agreement:**

On September 7, 2006, La Quinta sent Cordelia a written notice of termination ("Termination Notification") which states as follows:

> You have been previously notified that you are in default under your Franchise Agreement due to your failure to commence construction of your property on or before May 6, 2004...
>
> Accordingly, without constituting an election of remedies and without waiving the right to pursue any other remedy to which La Quinta may be entitled under your Franchise Agreement or at law or in equity, La Quinta hereby exercises its right to terminate your Franchise Agreement immediately.
>
> Pursuant to your Franchise Agreement we are entitled to liquidated damages in the amount of $100,000 as a result of the early termination of your Franchise Agreement. DEMAND IS HEREBY MADE FOR THE IMMEDIATE PAYMENT OF THIS AMOUNT. If you fail to immediately pay this amount, La Quinta intends to commence legal action against you to collect all amounts due to La Quinta. Please be advised that you will be responsible for all attorneys' fees and expenses incurred by La Quinta in pursuing collection of this amount.

Id., ¶ 20.[1]

Upon the termination of the Franchise Agreement, Cordelia was required to immediately stop using and to return all copies of La Quinta's confidential information, including without limitation the System Manual, the Purchasing

---

[1] "The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated." S&R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 375 (3rd Cir. 1992).

1 Manual and the Design and Construction Manual. To date, Cordelia remains in
2 material breach of the Franchise Agreement because it has not paid the liquidated
3 damages, nor has it returned the confidential information provided to it by La
4 Quinta. Id., ¶ 21. As a guarantor, Patel remains in material breach of the Guarantee
5 Rider. Id., ¶ 22. Guarantor Patel has failed and refused, and continues to fail and
6 refuse to pay and continues to owe La Quinta said monies due under the Guarantee
7 Rider. Id.

## LEGAL STANDARD

### a.  The Entry of Default Judgment is Proper

Defaults of Defendants operate, as a matter of law, as an admission by Defendants of the material allegations of the Complaint. By this motion, La Quinta seeks an order enforcing its written Agreements and, specifically, requests that the Court enter default judgment.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court may enter default judgment against the Defendants, based upon the declaration filed concurrently herewith. See also Forteza v. Mills, 534 F.2d 415 (1st Cir. 1976). As appears from the declarations and the record in this action, Defendants have been served with the Summons and Complaint. Their respective defaults were entered by the Clerk for failure to appear on July 10, 2007. Defendants are not minors, incompetents or in military service, and Defendants have not appeared in this action. See Declaration of Joel Siegel ("Siegel Decl."), ¶ 6 filed concurrently herewith. Notice of the application for judgment has been given as required by Rule 55(b)(2) of the Federal Rules of Civil Procedure. As appears from the Declaration of Rajiv Trivedi, Plaintiff is entitled to the Judgment sought in this matter. Plaintiff lodged the proposed Order and Judgment concurrently herewith, and served all parties with the motion papers in this matter.

### b. Defendants Breached the Franchise Agreement

La Quinta's claims against Defendants are for breach of contract. The elements of a breach of contract claim are (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. Clifton v. Premillenium, Ltd. 2007 WL 2142989, 2 (Tex., 2007); see also Barnett v. Coppell North Texas Court, Ltd. 123 S.W.3d 804, 815 (Tex. 2003).[2]

As established by the Declaration of Rajiv Trivedi, La Quinta has demonstrated each element: (a) the individual contracts are the Franchise Agreement and Personal Guarantee (b) La Quinta has performed its obligations under the contracts; (c) Defendants were required by their Agreements to commence construction by the agreed upon deadline and failed to do so. The Franchise Agreement was therefore properly terminated and Defendants are required to pay $100,000 in liquidated damages which they have failed to do.

### c. The Liquidated Damages Clause in the Franchise Agreement is Enforceable

Under Texas law, "in the absence of fraud, accident or mistake, a contract for liquidated damages between parties capable of contracting, where it clearly appears that such was the agreement of the parties, will be enforced." Geo. M. Dilley & Son v. Wise & Hervey, 160 S.W. 985, 986 (Tex.Civ.App. 1913). For a liquidated damages clause to be enforceable, "the fee charged must be a reasonable estimate of damages, and those damages must be incapable of precise calculation." BMG Direct Marketing, Inc. v. Peake, 178 S.W.3d 763, 766 (Tex., 2005).[3] The parties

---

[2] Section 20.01 of the Franchise Agreement states that the Agreement shall be governed by the laws of the State of Texas.

[3] If the Court finds that the Franchise Agreement is to be governed under California law, the 2-part test for determining the validity of a liquidated damages clause is the

Continued on Next Page

agreed in the Franchise Agreement that the damages in this case were "extremely difficult to calculate." Trivedi Decl., ¶ 10. The parties further agreed that the amount of liquidated damages required by the Franchise Agreement "shall serve as compensation for lost Royalty Fees, lost market penetration and lost goodwill in the market area of the Site, lost opportunity costs and the expense of developing another La Quinta Lodging Facility in the market area, and shall not constitute compensation for any other purpose." Id.

Additionally, the actual damages suffered by Plaintiff are likely to greatly exceed the $100,000 in liquidated damages required by the Franchise Agreement. Id. If Defendants had completed construction in accordance with the agreement, Plaintiff estimates that it would have received over $100,000 per year in fees pursuant to the Franchise Agreement, totaling $1.366 million over the first 10 years of the agreement. Id. Because it usually takes between two to four years for La Quinta Franchising to re-franchise a territory after an agreement is terminated, Plaintiff's ability to mitigate these damages is limited and it will certainly suffer a loss greater than $100,000 as a result of Defendants' breach. Id.

### d.   The Award of Prejudgment Interest is Proper

Plaintiff also requests the award of prejudgment interest. Texas courts have held that a plaintiff is statutorily entitled to an award of prejudgment interest at 6% in a breach of contract case where the amount payable is clearly ascertainable under Texas Finance Code Section 302.002. See e.g., Mobil Prod. Texas & New Mexico, Inc. v. Cantor, 93 S.W.3d 916 (Tex. 2002); Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 242 (Tex. 2001); Roach v. Dickenson, 50 S.W.3d 709, 714 (Tex. 2001). However, if this Court determines that Section 302.002 is inapplicable to the case at hand, La Quinta Franchising is nonetheless

---

same as the rule in Texas. Irwin v. Mascott, 96 F.Supp.2d 968, 976-977 (N.D. Cal. 1999).

entitled to an award of prejudgment interest based on Texas common law principles of equity. The Texas Supreme Court has recognized that courts could award prejudgment interest as a matter of equity even in the absence of an authorizing statute or contract. Phillips Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480, 485 (Tex. 1978).

Thus, Plaintiff requests that this Court award prejudgment interest at the interest rate of 6%, the rate at which Texas statutory law and common law allow. See Id. Section 18.03 of the Franchise Agreement requires payment of liquidated damages within 30 days of termination of the Franchise Agreement. The Franchise Agreement was terminated on September 7, 2006, thus requiring that Defendants pay $100,000.00 in liquidated damages by October 7, 2006. Plaintiff requests an award of prejudgment interest calculated by taking the $100,000.00 owed under the liquidated damages clause and calculating an amount equal to 6% simple interest on the amount owed from October 7, 2006 to the present date, for a total amount of $4,898.63.

    e.  **Damages**

As set forth above, as a result of the breaches and resulting termination of the Franchise Agreement, the Defendants owe $100,000 in liquidated damages. In addition, La Quinta is entitled to its reasonable attorneys' fees pursuant to Section 20.07 of the Agreements. La Quinta has been forced to incur attorneys' fees in the amount of $22,414.00 as a result of Defendants' refusal to comply with their obligations under the Agreements. Trivedi Decl., ¶ 24 and Siegel Decl., ¶ 5. La Quinta is also entitled to reimbursement for its costs in the amount of $1,822.82, pursuant to Section 20.07 of the Agreement. Trivedi Decl., ¶ 25 and Siegel Decl., ¶

5. La Quinta also seeks an award of prejudgment interest in the amount of $4,898.63. Trivedi Decl., ¶ 26 and Siegel Decl., ¶ 6.[4]

Based on the above, La Quinta's damages total **$129,131.45** as set forth in the following chart:

| | |
|---|---|
| Liquidated Damages | $100,000.00 |
| Attorneys' Fees | $22,414.00 |
| Costs | $1,822.82 |
| Prejudgment Interest | $4,898.63 |
| **Total** | **$129,131.45** |

Finally, the Defendants had been provided the following confidential information by La Quinta, but have failed to return it following the termination of the Franchise Agreement: Systems Manual, Purchasing Manual, Design & Construction Manual. Therefore, in accordance with Section 18.02 of the Franchise Agreement, La Quinta seeks an order requiring Defendants to return this confidential information in accordance with the terms of the Franchise Agreement. Trivedi Decl., ¶ 23.

## CONCLUSION

Accordingly, Default Judgment should be entered on behalf of Plaintiff La Quinta Franchising, LLC against the Defendants in this matter; Defendants should be ordered to remit payment in accordance to the liquidated damages clause in the

---

[4] In the absence of a statutory provision, prejudgment-interest may be awarded in the discretion of the court. U.S. v. Rainbolt, 543 F.Supp. 580, 581 (D.C.Tenn., 1982). Because the amount due to Plaintiff under the liquidated damages clause was clear and explicit in the Agreements and because Plaintiff repeatedly informed Defendants of their default and the due date of the amount due under the liquidated damages, prejudgment interest is appropriate and should be awarded in this case.

1  amount of $100,000, attorney's fees and costs in the amount of $24,236.82 and
2  prejudgment interest in the amount of $4,898.63, for a total of $129,131.45.
3       Finally, La Quinta seeks an order requiring Defendants to return the System
4  Manual, the Purchasing Manual and the Design & Construction Manual and other
5  confidential information in accordance with the Section 18.02 of the Franchise
6  Agreement.

Dated: August 20, 2007

**BRYAN CAVE LLP**
JOEL D. SIEGEL

By: /s/ Joel D. Siegel
Joel D. Siegel
Attorneys for Plaintiff
LA QUINTA FRANCHISING, LLC

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

**On August 20, 2007, I served the following documents, described as:**

NOTICE OF MOTION AND MOTION OF PLAINTIFF LA QUINTA FRANCHISING, LLC, FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CORDELIA HOTEL VENTURE, INC. AND DOLAT PATEL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CORDELIA HOTEL VENTURE, INC. AND DOLAT PATEL

DECLARATION OF RAJIV TRIVEDI IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

DECLARATION OF JOEL SIEGEL IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

[PROPOSED] ORDER FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CORDELIA HOTEL VENTURE, INC. AND DOLAT PATEL

on each interested party in this action, as follows:

Dolat Patel
782 Ignacio Woods Court
Concord, CA 94518

Mohammed Rahseparian,
Agent for Service of Process
Cordelia Hotel Venture, Inc.
5370 Clayton Road
Concord, CA 94520

☒ **(BY MAIL)** I placed a true copy (or original) of the foregoing document in a sealed envelope addressed to each interested party as set forth above. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California. I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☐ **(BY DELIVERY)** I caused a true copy of the foregoing document to be served by delivery to the offices of counsel of record for the interested party in this action.

☐ **(BY FEDEX)** I deposited in a box or other facility maintained by FedEx, an express carrier service, or delivered to a courier or driver authorized by said express carrier service to receive documents, a true copy of the foregoing document, in an envelope designated by said express service carrier, with delivery fees paid or provided for.

SM01DOCS648638.1

PROOF OF SERVICE

|   |   |
|---|---|
| 1 | Executed on August 20, 2007, at Santa Monica, California. |
| 2 | ☒   (FEDERAL ONLY)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. |
| 3 | I declare under penalty of perjury under the laws of the United States of America and the state of California that the foregoing is true and correct. |

*[signature]*

_____
KAMEELAH HAKEEM

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386