United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| La Quinta Franchising, LLP | No. C 07-2556 CW (JL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT (Docket Number 10)** |
| Cordelia Hotel Venture Inc, et al., | |
| Defendants. | |

**Introduction**

Plaintiff La Quinta Franchising, LLC moves for Default Judgment against corporate defendant Cordelia Hotel Venture, Inc. for breach of contract and individual defendant Dolat Patel for breach of guarantee. The district court (Hon. Claudia Wilken) referred this case to this Court on September 11, 2007 for a report and recommendation on the Motion for Default Judgment. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this is a civil action between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000). Having heard and reviewed Plaintiff's motion, this Court recommends that the Motion for Default Judgment be GRANTED in the amount of $125,911.38. Fourteen days after entry of judgment, Plaintiff should submit a bill of costs to be taxed by the court.

**Factual Background**

Plaintiff La Quinta Franchising, LLC ("La Quinta") is a limited liability corporation incorporated under the laws of the State of Nevada with its principal place of business in Texas. According to Plaintiff's information and belief, Defendant Cordelia Hotel Venture, Inc. ("Cordelia") is a corporation under the laws of the State of California with its principal place of business in Concord, California and Defendant Dolat Patel ("Patel"), an individual, is a citizen of the State of California, with his principal residence in Concord, County of Contra Costa, California.

La Quinta operates and licenses others to operate hotels under the trade names "La Quinta Inn" and "La Quinta Inn & Suites." (Complaint, 2). On or about November 6, 2003, La Quinta entered into a franchise agreement ("Franchise Agreement") with Cordelia, wherein Cordelia was granted a non-exclusive license to operate a hotel in Fairfield, California, using certain La Quinta proprietary information, including trademarks, copyrights, marketing materials, training programs, policies, manuals and trade secrets. (Complaint, 3). The Franchise Agreement provides for Cordelia's use of La Quinta's intellectual proprietary information and obligates Cordelia to open and operate the La Quinta Inn Facility for a term of 20 years under the La Quinta Marks. (Complaint, 4). On or about November 6, 2003, defendant Dolat Patel executed a Guaranty (the "Guarantee Rider") in connection with the Franchise Agreement that guaranteed in relevant part the "prompt payment and performance . . . of each and every obligation of Franchisee." (Complaint, 13).

The Franchise Agreement contains a time line for construction, completion, and opening of Cordelia's La Quinta Inn and Suites as well as sections detailing when Cordelia would be considered in breach of the agreement and remedies in case of material default on the agreement. The Franchise Agreement also contains a liquidated damages clause, because the parties "agreed that actual damages would be 'extremely difficult to calculate.'" (Declaration of Rajiv Trivedi in Support of Motion for Default Judgment "Trivedi Declaration," ¶ 10, Docket No. 13). The parties also agreed that the Franchise Agreement

would be governed by the laws of the State of Texas. (Trivedi Declaration, Exhibit 1, 35, Section 20.01).

According to the Franchise Agreement, Defendants were to commence construction within six months of entering the agreement, on or by May 6, 2004. This time period was extended by Plaintiffs and amended in the Additional Franchise Agreement Terms to twelve months from the date of entering the Franchise Agreement, with an option to request two six-month extensions. (Trivedi Declaration, Exhibit 1, E-1). In order to obtain an extension, Franchisee must offer evidence that it has applied for building permits and demonstrate a good faith effort to pursue such permits or other approvals towards construction commencement. *Id.*

Cordelia did not begin construction by May 6, 2004 and Plaintiff alleges that as an accommodation Plaintiff agreed, without waiver, to extend the deadline another six months to November 6, 2004. Cordelia did not commence construction by that date but requested another six month extension to May 6, 2005, which La Quinta also granted. By May 6, 2005, construction had still not begun and La Quinta sent a letter memorializing the Franchise Agreement and extended the deadline 180 days to November 6, 2005. When Cordelia did not meet this deadline, La Quinta sent a Notice of Default on June 5, 2006. On June 24, 2006, La Quinta sent Cordelia another letter (the "Cure Extension Under Notice of Default") modifying the terms to cure the default. Cordelia was required to provide Jeff Palla (presumably a member of La Quinta, but not explained in these documents) by August 25, 2006 with a copy of its lender's project study on which its denial of financing to Cordelia was based. (Complaint, 10). La Quinta maintains that Cordelia never provided the requested documentation, never commenced construction, and never indicated the existence of a Force Majeure. (Trivedi Declaration, ¶ 18, Docket No. 13). Plaintiff has not supplied the court with a copy of the Notice of Default or the letter entitled the "Cure Extension Under Notice of Default."

On September 7, 2006, Plaintiff sent Defendant Cordelia a written notice of termination stating that Cordelia was in default under the Franchise Agreement due to the failure to commence construction on or before May 6, 2004. The notice of termination,

which has not been submitted to this Court, also stipulated that La Quinta was entitled to liquidated damages in the amount of $100,000 as a result of early termination and that Cordelia was to pay that amount immediately or La Quinta would commence legal action. Cordelia did not pay the liquidated damages to La Quinta and Plaintiffs commenced this action against Cordelia and against Patel as the guarantor of the Franchise Agreement on May 14, 2007. (See Trivedi Declaration, Exhibit 1, D-1).

## Procedural Background

La Quinta filed the complaint on May 14, 2007. (Docket No. 1). Defendants were personally served by Plaintiff's representative on May 15, 2007. To date, Defendants Cordelia and Patel have not filed an answer or any responsive pleading. La Quinta moved for entry of default against Cordelia and Patel on June 25, 2007 (Docket No.'s 5, 6) and the Clerk filed the entry of default against both defendants on July 10, 2007 (Docket No. 9). Thereafter, La Quinta filed a Motion for Default Judgment on August 20, 2007. (Docket No. 10). The district court referred the case to this Court for a report and recommendation on the motion on September 11, 2007. (Docket No. 17). This Court heard Plaintiff's Motion for Default Judgment and ordered Plaintiff to file an amended declaration of costs. (Docket No. 20). Plaintiff submitted an amended declaration of costs. (Docket No. 21).

## This Motion

Plaintiff moves for Default Judgment against Cordelia for breach of contract, and against Patel for breach of guarantee, and seeks, as specified in the Franchise Agreement, an award of liquidated damages totaling $100,000, attorneys' fees calculated at $22,414, reimbursement for costs equaling $1,822.82, and an order requiring Defendants to return the confidential proprietary information Plaintiffs provided to them. In addition, Plaintiff seeks an award of prejudgment interest at a rate of 6% as allowed by Texas statutory and common law. In its amended declaration of costs, Plaintiff calculates the prejudgment interest at 6% from the date of October 8, 2006 (30 days after the Franchise Agreement was terminated) to October 17, 2007 (date of motion hearing) for a total of $6,164.38. The total sum in damages that Plaintiff La Quinta now seeks is $130,401.16.

**Plaintiff's Legal Argument**

Plaintiff sues Defendant Cordelia for breach of contract. Relying on Texas law as agreed upon in section 20.01 of the Franchise Agreement, Plaintiff assumes the elements of a breach of contract claim are 1) the existence of a valid contract between plaintiff and defendant, 2) the plaintiff performed, 3) the defendant breached the contract, and 4) the plaintiff was damaged as a result of the breach. *Clifton v. Premillenium, Ltd.*, 2007 WL 2142989, 2 (Tex. 2007); *see also Barnett v. Coppell North Texas Court*, Ltd., 123 S.W.3d 804, 815 (Tex. 2003). Plaintiff alleges the following: a) the Franchise Agreement and the Personal Guaranty are valid; b) La Quinta has performed its obligations under the contracts; c) Defendants were required by their agreements to commence construction by the agreed upon deadline and failed to do so; d) the Franchise Agreement was properly terminated and Defendants are required to pay $100,000 in liquidated damages as well as other expenses Plaintiff accrued in this action. (Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment Against Defendants Cordelia Hotel Venture, Inc. and Dolat Patel "Mem. P. & A.," 9, Docket No. 11).

Section 5.03(b) of the Franchise Agreement states that the contracting party must commence construction of the La Quinta Lodging Facility within six months after the effective date of the agreement, which was later amended to be within twelve months after the effective date of the agreement. (Complaint, 4-5). Section 16.01 of the Franchise Agreement specifies that the failure to comply with the construction and opening requirements of sections 5.03(b) shall constitute a material breach and an event of default of the agreement. Plaintiff alleges that it gave Defendants the proper amount of time to commence construction, over 2 years, and because Defendants never began construction of the site, nor gave any reason for delay, Defendants are in material breach of the Franchise Agreement. Accordingly, Plaintiff argues that it has sustained a loss of future revenue over the remainder of the term of the Franchise Agreement and has been damaged in an amount according to proof but no less than $100,000. (Complaint, 14).

Section 16.02 of the Franchise Agreement provides for certain remedies upon material breach, including an action for specific performance and termination of the Franchise Agreement.  In addition, Plaintiff argues that it is entitled to the liquidated damages agreed upon in the Franchise Agreement because Defendants did not commence construction in the time allotted within the agreement.  Section 18.03 of the agreement states in relevant part, "If this Agreement is so terminated before your Facility opens for business as a La Quinta Lodging Facility, you agree to pay us as liquidated damages and not as a penalty, the amount of $100,000, unless you can demonstrate to our reasonable satisfaction that your failure to open is due solely to circumstances constituting Force Majeure" (Trivedi Declaration, Exhibit 1, Docket No. 13).  The liquidated damages clause was included because the parties "agreed that actual damages would be 'extremely difficult to calculate.'" (Trivedi Declaration, ¶ 10).   Plaintiff avers that the liquidated damages serves as compensation for lost Royalty Fees, lost market penetration and lost goodwill in the market area of the site, lost opportunity costs and the expense of developing another La Quinta Lodging Facility in the market area.  (Trivedi Declaration, Exhibit 1).

Plaintiff La Quinta asks for costs of suit and attorneys' fees.  Section 20.07 of the Franchise Agreement states, "[t]he party who prevails in any judicial proceeding will be awarded its costs and expenses incurred in connection therewith, including reasonable attorney's fees."  La Quinta stipulates in its Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Docket No. 11) that the attorney's fees equal $22,414.00 and the costs of suit total $1,822.82.

Plaintiff also asks for an order requiring specific performance of the Franchise Agreement and Guarantee Rider.  Particularly, Plaintiff asks Defendants to comply with all post-termination covenants of the agreement, including the return of the confidential information that La Quinta gave them consisting of the Systems Manual, Purchasing Manual, and Design & Construction Manual.  (Complaint, 15; Mem. P. & A., 12).  Plaintiff points to Section 18.02 of the Franchise Agreement which states that upon termination of the agreement, Defendant will "immediately cease to use all Confidential Information and

return . . . all copies of the System Manual and computer files and records, computer software systems, records, files, instructions, correspondence, and all other materials relating to the operation of your Facility that we have provided to you or that you have obtained by any other means." (Mem. P. & A., 12).

Lastly, Plaintiff's complaint asks for liquidated damages and actual damages according to proof, "together with interest," and for such other relief as the court deems proper. (Complaint, 15). In the Memorandum of Points and Authorities in Support of Motion for Default Judgment, Plaintiff asserts that prejudgment interest is proper according to Texas law. (Mem. P. & A., 10). Texas Courts have held that a plaintiff is statutorily entitled to an award of prejudgment interest at 6% in a breach of contract case where the amount payable is clearly ascertainable under Texas Finance Code Section 302.002. *See e.g. Mobil Prod. Texas & New Mexico, Inc. v. Cantor*, 93 S.W.3d 916 (Tex. 2002); *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 242 (Tex. 2001); *Roach v. Dickenson*, 50 S.W.3d 709, 714 (Tex. 2001). Plaintiff requests prejudgment interest in the amount of $6,164.38 which is equal to 6% interest on the $100,000 in liquidated damages owed to La Quinta accruing from the date on which the Franchise Agreement was terminated (October 8, 2006) until the hearing date of October 17, 2007. (Declaration of Joel Siegel in Support of Motion for Default Judgment, "Siegel Declaration", 3, Docket No. 12; Supplemental Declaration of Costs, 3, Docket No. 21).

## Legal Analysis

According to Rule 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." Fed. R. Civ. P. 55. On July 10, 2007 the Clerk of the Court entered Cordelia and Patel's default as provided by Rule 55(a). Because La Quinta's claim is not for a sum certain (see Complaint, 15, Docket No. 1), La Quinta also applied for a default judgment to be entered by the court. Fed R. Civ. P. 55(b)(2).

Ordinarily, an entry of default establishes the defendant's liability and "the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement*

*Co. v. Howard Pipe & Concrete Prods.*, Inc. 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal* 826 F.2d 915, 917 (9th Cir. 1987). However, as a general rule, default judgments are disfavored and whenever possible a case should be decided on its merits. *Pena v. Seguros*, 770 F.2d 811, 814 (9th Cir. 1985). Therefore, although La Quinta meets the necessary criteria for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court has the ultimate discretion of whether to grant a default judgment. In exercising its discretion to grant the default judgment, the court may consider the following:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471 - 1472 (9th Cir. 1986). All factors considered, default judgments are proper where defendant has never appeared in the action, its failure to defend is unexplained, and plaintiff would suffer prejudice if the default were not entered. See *Chrysler Credit Corp. v. Macino* 710 F.2d 363, 367 (7th Cir. 1983).

This is a straightforward case of breach of contract, in which Defendant has failed to appear or otherwise respond, and Plaintiff has been damaged by the breach of contract and breach of guaranty. Therefore, this Court recommends that the Motion for Default Judgment be granted. Plaintiff claims to have sustained a loss of future revenue, loss of Royalty Fees, lost market penetration, lost goodwill in the market area of the site, lost opportunity costs and the expense of developing another La Quinta Lodging Facility in the market area. This Court heard Plaintiff's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) to determine the amount of damages that should be awarded. Each damages request will be examined separately.

**A. Liquidated Damages**

Section 18.03 of the Franchise Agreement states that the defaulting party must pay liquidated damages in the amount of $100,000 if they do not commence construction by a

certain date. The evidence offered by Plaintiff shows that Defendants Cordelia and Patel did not begin construction or offer any explanation as to the delay. Plaintiff La Quinta should be awarded liquidated damages as the Defendants were on notice by and through the Franchise Agreement that the liquidated damages would be owed at the time of default.

**B.  Return of Proprietary Materials**

This Court recommends that the district court order Defendants to return the Systems Manual, Purchasing Manual, and Design & Construction Manual and any other confidential proprietary information that Defendants may have. Section 18.02 of the Franchise Agreement gives notice that the defaulting party must return those materials when the agreement is terminated.

**C.  Attorney's Fees**

The parties have contracted under Texas law, therefore, Texas law applies to the award of attorney's fees in this case. Currently, Texas law allows for reasonable attorney's fees in a breach of contract case where "the parties to the contract provide for attorney's fees within the contract itself." 49 TXPRAC § 10.42. In order to determine the reasonableness of the requested fee amount, courts may look at: "(1) the time and labor required, and the novelty or difficulty of the issues, (2) whether the work required that other work opportunities be foregone, (3) the customary fee, (4) the value of the case and the results obtained, (5) time limitations, (6) the nature and length of the relationship with the client, (7) the experience, reputation, and skill of the lawyer, (8) whether the fee was fixed or contingent." *Mercier v. Southwestern Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775–76 (Tex.App.—Corpus Christi 2007) (citing, inter alia, *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

The Franchise Agreement stipulates in Section 20.07 that "[t]he party who prevails in any judicial proceeding will be awarded its costs and expenses incurred in connection therewith, including reasonable attorney's fees." (Trevedi Declaration, Exhibit 1, 37, Docket No. 13). Because Plaintiff's Motion for Default Judgment should be granted, Plaintiff should be awarded its reasonable attorney's fees. In its amended declaration of costs ordered by

this Court (Supplemental Declaration of Joel Siegel in Support of Motion for Default Judgment, Docket No. 21), Plaintiff declares $22,414.00 in attorney's fees and states that the fees are both reasonable and customary in the community for legal services in litigation of this nature. The declaration provides the hourly rates of the attorneys and the general work done by each, namely drafting the complaint and motion, appearing at the hearing, consulting on legal issues and performing legal research.

There are six attorneys and four non-attorneys listed as participants in the preparation of this case in Plaintiff's amended declaration of costs. The attorneys' fees of Joel D. Siegel, Heather Orr, Glenn Plattner, Eliza Nichols, Shelly C. Gopaul, and Brian Cole appear to be reasonable in this community for litigation of this nature. Collectively, their fees total $19,727.00. Plaintiff should be awarded this amount in attorneys' fees.

Of the non-attorneys, two are law librarians, one is a paralegal and another is a clerical assistant at Bryan Cave, LLP. Susan Gordon, a paralegal, aided in the preparation and service of the original request for default as well as assisted with "the files, exhibits, and other paralegal duties" at $250 an hour. This is the identical billing rate of a second year associate at the same firm, Shelly Gopaul. The law librarians, Karen Lasnik and Karol Howard assisted with factual and legal research at $180 and $145 an hour, respectively. Rachel Hernandez, a clerical assistant, assisted with the redacting of attorney billing summaries at $40 an hour.

There is no Texas law on point whether paralegal, law librarian or clerical assistant fees may be included in attorneys' fees. However, one Texas case states that in order to recover compensation for a legal assistant's work, "a party must present evidence establishing that legal assistant is qualified through education, training or work experience to perform substantive legal work, that substantive legal work was performed under direction and supervision of attorney, nature of legal work which was performed, hourly rate being charged for legal assistant, and number of hours expended by legal assistant." *Gill Sav. Ass'n v. International Supply Co., Inc.*, 759 S.W.2d 697 (Tex. App. 1988).

Because Plaintiff is suing for breach of contract, the contract only stipulates to the recovery of attorneys fees, and the amended declaration makes no reference to the qualifications of the legal assistants, Plaintiff should not be awarded fees for the firm's paralegal, clerical assistant, and librarians.  Therefore, Plaintiff should only be awarded $19,727 in attorneys' fees.

**D.  Costs of Suit**

In order to recover costs of suit, Plaintiff must submit an itemized bill of costs to be taxed by the court.  The list of costs Plaintiff provided in the amended declaration of costs is insufficient to determine what costs should be awarded.  Pursuant to Local Rule 54, Plaintiff must serve and file a bill of costs no later than 14 days after entry of judgment with the appropriate affidavit and supporting documentation.  Civ. L. R. 54-1.

Generally, the reimbursement of taxable expenses in federal litigation is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Rule 54(d) states that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d).  Under 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title.

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title 28 U.S.C. § 1828.

28 U.S.C. § 1920.

According to Section 20.07 of the Franchise Agreement, Plaintiff is entitled to the costs and expenses of the suit.  (Trevedi Declaration, Exhibit 1, 37, Docket No. 13).  In its

amended declaration of costs ordered by this Court, Plaintiff requests $1,822.82 in costs incurred in this case. (Docket No. 21). This includes the initial filing fee of $350.00, service costs equaling $647.20, photocopying, postage, and telephone fees of $176.82, and Westlaw and Lexis Research charges of $648.80. The filing fee is expressly recoverable under 28 U.S.C. § 1920. All other costs will be examined separately as they are not specifically recoverable under 28 U.S.C. § 1920.

When analyzing what costs should be awarded, a court should keep in mind that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question. *In re Media Vision Technology Securities Litigation* 913 F.Supp. 1362, 1366 (N.D.Cal.,1996). The attorney is expected to absorb some of the cost of doing business as an attorney, and should not be allowed to shift the expense of overhead in running a legal practice to his or her client. *Id.*

### I. Service Costs

Plaintiff lists a $647.20 charge for "service costs" under the costs of suit section in its amended declaration of costs ordered by this Court. (Docket No. 21). There is no explanation accompanying this figure, and it is unclear what costs or what services this may include. When Plaintiff submits a bill of costs to be taxed by the court, it should explain this charge in detail and provide the necessary supporting documents.

### ii. Photocopies/Postage/Telephone

Plaintiff combines the photocopying expense with postage and telephone expenses for a total of $176.82. Reimbursement requests for photocopying charges are regularly granted, but generally only if these charges are not part of the law firm's overhead. *In re Media Vision Technology Securities Litigation* 913 F.Supp. at 1368. Also, the photocopying expense must have been necessary for effective and competent representation. *Id.*

There seems to be a general consensus among jurisdictions to reimburse counsel for postage expense. *Id.* In addition, reasonable out-of-pocket expenses, such as telephone costs, incurred by the attorney, which are normally charged to the fee-paying client in the course of providing legal services are recoverable. *Id.* at 1369. Plaintiff's request for $176.82 in photocopying, postage, and telephone expenses seems reasonable

for this case; however, these items should be separated and supplemented with the appropriate documents before being taxed by the court.

### iii. Westlaw/Lexis/Research charges

Plaintiff requests $648.80 in Westlaw and Lexis research charges. Courts have discretion under Rule 54(d) to award costs not specifically provided for by statute. Fed. R. Civ. P. 54(d). Some courts have exercised this discretion broadly, determining that because computerized legal research is a reasonable and essential cost in contemporary legal practice, it is recoverable. *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706 (N.D. Ill. 1982). The Ninth Circuit has held that computerized legal research is not a recoverable cost under 28 U.S.C. § 1920 because it is not specifically allowed by the statute. *Guinasso v. Pacific First Federal Sav. and Loan Ass'n*, 100 F.R.D. 264 (D. Or. 1983).

Other jurisdictions have held that "[t]he cost of computer–assisted legal research cannot be recovered as an independent item of cost by a prevailing party since the cost of legal research, whether manual or computerized, is a facet of attorney's fees." 35B C.J.S. Federal Civil Procedure § 1359 (2007); citing *Nugget Distributors Co-op of America, Inc. v. Mr. Nugget,* 145 F.R.D. 54 (E.D. Pa. 1992). In addition, it has been noted that "the compensable element is the attorney's time, not the medium that delivers the message, whether one reads a case from a book or a screen." 35B C.J.S. Federal Civil Procedure § 1359; *citing BD v. DeBuono*, 177 F. Supp. 2d 201 (S.D. N.Y. 2001). Generally, computerized legal research fees are considered an element of attorneys' fees and not a separate item of cost. *Sulkowska v. City of New York*, 170 F. Supp. 2d 359 (S.D. N.Y. 2001); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000), cert. denied, 532 U.S. 1038 (2001); *Leftwich v. Harris–Stowe State College*, 702 F.2d 686 (8th Cir. 1983); *Benson v. Northwest Airlines, Inc.*, 9 Nat'l Disability Law Rep. ¶266 (D. Minn. 1997).

Here, Plaintiff has submitted a request for attorney's fees consisting of time for legal research as well as a request for costs related to Westlaw and Lexis research. Therefore, this Court recommends that Plaintiff should not be awarded $648.80 in Westlaw and Lexis research charges as this cost should have been subsumed in the attorneys' regular fees or overhead costs of the firm.

In conclusion, this Court recommends that Plaintiff submit a bill of costs no later than 14 days after entry of judgment with the appropriate affidavit and supporting documentation pursuant to Local Rule 54-1. This bill of costs should exclude fees for Westlaw and Lexis research as they are not recoverable as costs of suit. The bill should include a more detailed account of the requested service costs of $647.20 and the photocopies/postage/telephone fee request of $176.82.

### E. Pre-Judgment Interest

Because Texas law allows for prejudgment interest, and Plaintiff and Defendants agreed that the contract be governed by Texas law, Plaintiff should be awarded prejudgment interest. Plaintiff has calculated the prejudgment interest of the liquidated damages at a 6% rate from the date on which the Franchise Agreement was terminated (October 8, 2006) until the hearing date of October 17, 2007, equaling $6,184.38. (Supplemental Declaration of Costs, 3, Docket No. 21). Plaintiff should be awarded prejudgment interest in the amount of $6,184.38.

### Conclusion

This Court recommends that Plaintiff's Motion for Default Judgment be granted. The district court should award Plaintiff liquidated damages in the amount of $100,000 and order Defendants to return Plaintiff's proprietary material. In addition, the court should award Plaintiff attorneys' fees equaling $19,727 and prejudgment interest in the amount of $6,184.38 for a total amount of $125,911.38 in monetary damages. A bill of costs must be served and filed no later than fourteen days after entry of judgment with the

appropriate affidavit and supporting documentation in order to receive further compensation for costs of suit.

DATED: November 16, 2007

_____
JAMES LARSON
Chief Magistrate Judge